**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

EDWARD BEARINT and AMANDA BEARINT,
individually and on behalf of their minor child,
KAGAN BEARINT,

       Plaintiffs,

v.                                                                    CASE NO. 8:04-CV-1714-T-17MAP

JOHNSON CONTROLS, INC.,
HYPERION L.P. a/k/a HYPERION
SEATING CORP.; TACHI-S ENGINEERING
 USA; and LEAR CORP.,

       Defendants.

_____/

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

       This cause is before the Court on Defendant's Amended Motion for Summary

Judgment and supporting Memorandum of Law, filed December 15, 2005 (Docket Nos.

62, 63) and Plaintiff's Response to Defendant's Amended Motion for Summary

Judgment, filed on January 18, 2006 (Docket No. 78).  For the reasons enunciated below,

Defendant's Amended Motion for Summary Judgment is **DENIED** as to the negligence

and product liability claims and **GRANTED** as to the failure to warn claim.  The

following facts are taken as true for the purposes of resolving this motion.

**BACKGROUND**

PROCEDURAL

       In another court, Plaintiffs, Edward, Amanda, and Kagan Bearint, sued General

Motors and Saturn based on injuries sustained in an automobile accident.  The parties

therein entered a settlement prior to initiating this suit.  Here, Plaintiffs filed their

Complaint in State Court (Docket No. 2) against Defendants, Johnson Controls, Tachi-S

Engineering USA, and Lear Corp., alleging negligence, defective product liability, and failure to warn.  The case was removed to Federal Court July 23, 2004.  The Defendants, Johnson Controls and Tachi-S Engineering, filed their Answer and Affirmative Defenses (Docket No. 3), followed by Hyperion Corporation's  Answer and Affirmative Defenses on October 27, 2004 (Docket No. 30).  Lear Corp. was dismissed as a defendant February 2, 2005.  (Docket No. 35).  The remaining Defendants then filed a Motion for Summary Judgment on December 15, 2005 (Docket No. 56), and followed with the current Motion.

<u>FACTUAL</u>

Defendants, Johnson Controls and Tachi-S Engineering USA, contracted with General Motors' (GM) Saturn subsidiary to design and produce seats for Saturn's passenger vehicles.  Saturn specified the seat demands, including the amount of torsional stress the seat must withstand.  The seat was designed and built to meet or exceed the specified torsional stresses and other requirements.

Plaintiffs, Edward and Amanda Bearint, purchased a Saturn.  On April 14, 2000, Amanda Bearint and her infant son, Kagan, were involved in an automobile accident, when a Dodge conversion van struck the rear of Bearint's Saturn at thirty five miles per hour.  The accident caused extensive damage to the Saturn, including projecting the luggage shelf forward.  There is an issue whether this caused Kagan's child restraint seat to travel forward aiding in Kagan's injuries.  The driver's seat of the Saturn collapsed, falling on Kagan's head.  This caused numerous injuries to Kagan, which may include brain damage, resulting in possible mental retardation.

**Standard of Review**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate if the court determines that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  (Fed. R. Civ. P. 56(c)).  This determination is not based solely on the pleadings, but can be made if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, support the moving parties contention that no genuine issue of material fact exists.  *Id.*

Once the moving party has properly supported its motion for summary judgment, the non-moving party must go beyond the pleadings to show that a genuine issue exists for trial. *Celotex Corp. V. Catrett*, 477 U.S. 317, 324 (1986). The non-moving party must come forward with evidence sufficient to establish the existence of the essential elements of the party's case, and for which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322; *Hilburn v. Murata Elecs. N. Am. Inc.*, 181 F.3d 1220, 1225 (11th Cir. 1999).

When determining whether the moving party has met its burden, the Court accepts as true the non-movant's evidence, and all justifiable inferences are to be drawn in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The question before the court then is not whether the judge thinks the evidence obviously favors one side or the other, rather the question is whether a fair minded jury could return a verdict for the plaintiff on the evidence presented. *Id.* At 252. Where the record, taken in its entirety, cannot lead a rational trier of fact to find for the non-moving party, there is no genuine issue to be resolved at trial. *Matsushita Elec. Indus. Co. V. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## Discussion

### 1.      Negligence

> [T]o recover on his negligence claim, Plaintiff merely needed to prove that (1) Defendant owed him a legal duty; (2) Defendant breached that duty; (3) he suffered injury as a result of that breach; and (4) the injury caused damage.

*Kayfetz v. A.M. Best Roofing, Inc.*, 832 So.2d 784, 786 (Fla. 3d DCA 2002). Component manufacturers owe a duty to consumers to design and manufacture components without defects and to adequately warn of the consequences of improper use. *Pinchinat v. Graco Children's Products, Inc.*, 390 F.Supp.2d 1141, 1146 (M.D. Fla. 2005) (quoting *Ferayorni v. Hyundai Motor Co.*, 711 So.2d 1167, 1170 (Fla. 4th DCA 1998)).

The Defendants claim a particular individual must be identified as to whom a duty is owed, not the public at whole. Moreover, Defendants argue that the Defendants had a duty to provide detailed designs and a manufactured seat that satisfied Saturn's specifications. Because GM, through its Saturn subsidiary, specified the tolerances of the

automobile seat, and since Defendants met and exceeded those requirements, Defendants owed no duty to the Plaintiffs and, therefore, cannot be liable under negligence. Defendants also argue the seat experienced forces beyond the design limits.  Thus, the seat functioned as Defendants intended and in a predictable manner, until the product experienced a situation for which it was not designed to normally function.

Plaintiffs allege that the Defendants owed Plaintiffs a duty as the ultimate consumer of the component product.  As such, the Defendants were required to supply a non-defective seat for use in Saturn vehicles.  Defendants breached that care in designing and manufacturing the Saturn seats, by "failing to eliminate unreasonable risk of readily foreseeable injuries."  (Complaint, p 4 para 23 Docket No. 2),(Whitman Decl. ¶¶13-21. Additionally, Defendants did not warn of the possibility of seat failure.  This led Plaintiffs to believe it was safe to place a child restraint seat behind the driver's seat, resulting in cranial injuries to Kagan.

The Defendants, as component manufactures, owed the Plaintiffs, the ultimate product consumer, a duty in the present case to release a non-defective product. Floridian Courts have been split as to the rationale behind this duty, either from Florida's use of the Restatement of Torts (Third) Prods. Liab. §5 or from the consumer-expectation standard.  Discussed *infra*.  Plaintiffs allege, and have supporting testimony, that Defendants breached that duty by releasing a defective seat.  (Whitman Decl. ¶¶13-21). This may have resulted in the seat collapsing onto Kagan's head, and Kagan suffering brain damage.  Therefore, Plaintiffs have established a prima facie case of negligence and have established that genuine issues on material fact remain to be tried..

## 2.     Product Liability

Florida has adopted a strict products liability standard from the Restatement (Second) of Torts §402A.  *Pinchinat v. Graco Children's Products, Inc.*, 390 F.Supp.2d 1141, 1146 (M.D.Fla. 2005) (summarizing decision from *West Caterpillat Tractor Co.*,

336 So.2d 80, 87 (Fla. 1976).). This can stem from "a design defect, a manufacturing defect, or an inadequate warning." *Id.* quoting *Ferayorni v. Hyundai Motor Co.*, 711 So.2d 1167, 1170 (Fla. 4th DCA 1998).

a.       **Defectively Designed Component-Product**

To prove a prima facie case of defectively-designed product liability, a "plaintiff [must] prove that (1) a product (2) produced by a manufacturer (3) was defective or created an unreasonably dangerous condition (4) that proximately caused (5) injury." *Id.* at 1148.

There is a split of authority as to when liability should be imposed. Florida has used the Restatement Third of Torts, Prods. Liab. §5, as instructive on what creates defective product liability. *Scheman-Gonzalez v. Saber Manuf.*, 816 So.2d 1133, 1141 (Fla.4th DCA 2002).[1]  Additionally, Florida has expressly adopted the consumer expectation standard. *Force v. Ford Motor Co.*, 879 So.2d 103, 110 (Fla. 5th DCA 2004). However, *Force* did not expressly reject using Restatement Third of Torts, Prods. Liab. §5, and has still left open the possibility of using other tests for "products that are too complex for a logical application of the consumer-expectation standard." *Id.*

The Defendants argue that they were only charged with designing a seat, as a component part of a Saturn automobile. Defendants allege that a component part manufacturer is not liable for a defective final product if the component was manufactured in accordance with the specifications established by the customer. *See* Defendant's Motion for Summary Judgment, p 4, filed December 15, 2005 (Docket No. 63). Thus, since GM specified the requirements of the seat, and because Defendants met or exceeded those requirements, the Defendant is not liable for any defects in the Saturn vehicle.

---

[1]A supplier of component parts is not liable for injury by the assembled product unless the component itself is defective and caused the harm; or the component supplier participated in integrating the component into the assembled product design and the integration of the component is defective and that defect caused the harm. *Scheman-Gonzalez v. Saber Manuf.*, 816 So.2d 1133, 1141(Fla. Dist. Ct. App. 2002) (Quoting R.3d Torts).

Plaintiffs counter that the seat itself is a product, not a component. Regardless of the classification of the seat, Plaintiffs also contend that the seat's recliner mechanism was defectively designed and manufactured. (Whitman Decl. ¶¶13-21). Because the seats in Saturn vehicles were designed to accommodate an infant restraint system, as per Saturn's specifications, Plaintiffs argue that the seat should be designed to protect from the risk that the seat would collapse into the rear compartment. Also, the seat suffered an abrupt failure and rapidly collapsed because the recliner mechanism's gear teeth suffer substantial damage through normal use. This gear tooth wear caused the teeth to break and the seat to rapidly fall into the rear vehicle compartment.

Plaintiffs further argue that Defendants worked with Saturn integrating their seats into the Saturn's vehicles. The Defendants regularly met with Saturn's employees and discussed the design and manufacture of the seats. Additionally, Defendants' representative confirmed his responsibility was to help "integrate [the seat] with the other parts of the Saturn vehicle." Westphal Dep. 25. Therefore, Plaintiffs argue the Defendants are liable for injuries caused by the Saturn vehicle because Defendants helped integrate its' seats into the Saturn vehicle line.

Both Plaintiffs and Defendants concede that the Defendants designed and manufactured seats for model year 1995 Saturn vehicles. The Plaintiffs claim that the Defendants integrated its' seats into the vehicle by working with Saturn to collaboratively design seats for Saturn's vehicles. The Court does not feel Defendants' acts of working with Saturn are enough to qualify as integration, as most components are designed to operate within an assembled final product. Further, comment (a) to the Restatement of Torts, Product Liability §5 states, "[o]ther components, such as a truck chassis or multi-functional machine, function on their own but still may be utilized in a variety of ways by assemblers of other products." R.3d Torts, Prods. Liab. §5. (2006). However, the Court does find sufficient evidence to possibly support a finding the component defective and, therefore, impose potential liability on Defendants, as consistent with *Scheman-Gonzalez* or the consumer-expectation standard of *Force*.

Plaintiffs have pointed out that the seats in Plaintiffs' vehicle had excessive wear that may have contributed to the failure of the seat back and caused the front seat to

collapse on Kagan's head.  The Plaintiffs also indicated that the seat wear, in the recliner gear teeth, was a result of daily wear and due to a defective gear design in the seat.  Further, based on the consumer expectation standard,

> [w]hen a seat belt, designed to be an instrument of protection, becomes an instrument of life-threatening injury, a consumer is justified in concluding that it did not perform as safely as promised. A seat belt is a familiar product whose basic function is well understood by the general population

*Force v. Ford Motor Co.*, 879 So.2d 103, 110 (Fla. 5th DCA 2004) (quoting *General Motors Corp. V. Farnsworth*, 965 P.2d 1209, 1221 (Alaska 1998).).  The current case involves a seat, not a seat belt.  However, the Court finds the quote instructive in determining Defendant's possible liability.  Therefore, regardless of which standard is applied, the Restatement of Torts or the consumer-expectation standard, the seat should be capable of daily wear without suffering a catastrophic seat failure during an accident.  Thus, Plaintiffs have upheld their burden and shown a prima facie case.

**b.       Failure to Warn**

To prove a prima facie case of Defendants' failure to warn, Plaintiff must show that the Defendants' manufactured or distributed the product at issue, and Defendants "did not adequately warn of a particular risk that was known or knowable" based on current scientific and medical knowledge at the time the products was manufactured and distributed.  *Pinchinat*, 390 F.Supp.2d at 1146.  To adequately warn, the label must make apparent the potential harm and should identify the dangers arising from deviating from manufacturer's intended use.  *Id.*  Further, "[t]he sufficiency and reasonableness of the warnings are questions of fact best left for the jury unless the warnings are accurate, clear, and unambiguous" *Id.*  However, this duty to warn applies to inherently dangerous products.  *Scheman-Gonzalez*, 816 So.2d at 1139.

Plaintiffs claim that Defendants gave no warnings of the potential hazards of seat collapse to the government, Saturn, or ultimate consumer. (Response to  p19, Dkt 78).  Plaintiffs also allege Defendants' knew of the seat back failure.  However, Plaintiffs have not identified the seat as inherently dangerous, and, thus, requiring a warning label.  While the seat may collapse, there was nothing to show this would result in injury to the passenger.  In fact, automotive experts still argue whether strengthening the seat to

prevent such failures would increase safety or result in more extensive injuries. (Whitman Dep. at 199).  Therefore, Plaintiffs have not established a prima facie case as to Defendants' failure to warn.

However, Plaintiffs have shown there is an issue whether the seat and recliner gear was defectively designed, and it is for a jury to determine whether the Defendants defectively designed and manufactured the recliner gear teeth.  Further, Defendant's did owe Plaintiffs reasonable care in releasing the seat into commerce and Plaintiffs have shown a case of negligence.  As such, all parties will benefit from further proceedings. Therefore, it is

**ORDERED** that the Defendant's Amended Motion for Summary Judgment (Docket No. 62) be **DENIED** with respect to the negligence and product liability claims (COUNT 1 and 2) and **GRANTED** with respect to the failure to warn claim (COUNT 3) and Count 3 is dismissed with prejudice from this case.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, on this 10th day of July, 2006.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All parties and counsel of record